# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00750-COA

**TAMARA LONGS A/K/A TAMARA LONG**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2022 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE DOWDY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A woman shot and killed one person and injured another while leaving a gas station. She chose to waive her right to a jury trial and proceeded with a bench trial resulting in conviction. On appeal, she claims she should have been provided a jury trial rather than a bench trial and that her waiver was not knowing or voluntary. Finding no error, we affirm.

## FACTS

¶2. While on her way to a family crawfish boil one evening, Tamara Longs stopped at a Shell gas station in Woodville to pick up some cigars. After making her purchase and exiting the store, Longs was approached by Aaronecia Bell about a contentious encounter the two had shared just days before involving both women's boyfriends.

¶3. As Bell approached Longs, she stated, "B****, I want to know what was your purpose of calling Jeremy." Longs, "trying to remain calm," replied that it was "already done." Bell repeated herself and then struck Longs on her head. "[A]ctually terrified now," Longs pulled her pistol[1] out of her pocket and pointed it at Bell, "thinking she would back up." Instead, Bell attempted to slap the gun out of Longs's hand, "but the gun went off" and Bell was shot.

¶4. Bell's brother, Racondo Gaines, was inside the gas station. He ran outside after realizing his sister was injured. Gaines ran toward Longs, and the two struggled over the gun. At some point during the scuffle, Longs shot Gaines in his hand.

¶5. Immediately after, Longs drove "directly to the Sheriff[']s] Station" and reported "that she had just shot someone at Shell." After sustaining multiple gunshot wounds, Bell died. Longs was subsequently indicted on two counts: first-degree (deliberate design) murder (Count I) and aggravated assault (Count II).

## PROCEDURAL HISTORY

¶6. Through counsel, Longs moved ore tenus for a bench trial. After being sworn and questioned by the trial court, Longs confirmed that she wished to waive her right to a jury trial.

> The Court: Ms. Long, your attorney just advised the Court that you wish to waive the right to a jury trial . . . . Your case is set for trial, I believe, that's a Monday the 13th, Monday the 13th. I just want to make sure, and I know your attorney has gone over things with you, but I have to hear it from you too.
>
> Longs: Yes, sir.

---

[1] Because of a previous unrelated incident, Longs testified that she always carried a firearm for personal protection.

The Court:   It's a right that you have to a trial by jury, but sometimes it's not unheard of and it's not totally unusual for a defendant to waive the right to a trial by jury. *So I just want to make sure that you have thought about this very carefully and that this is what you want to do.*

Longs:        Yes, sir.

The Court:   The trial would still be on the 13th, but it would be before the Court, myself. And what happens is I sit just like a jury, I find the facts and apply the law. I've been doing this for a long time. I've had trials before. I've sat and I've had cases like that sometimes. Sometimes found guilty, sometimes not guilty. It just depends, because I will look very carefully at the facts and the law. *But you understand you can't come back later on and say I wish I had a jury or I changed my mind.* Do you understand?

Longs:        Yes, sir.

The Court:   I just want to make sure.

. . . .

The Court:   Ms. Longs, you're out on a good bond so just stay in touch with your attorney. *If any reason anything changes or you change your mind, be sure to let him know right away.* But once we get here Monday and start, *we won't have a jury here and it will be too late then.*

Longs:        Yes, sir.

The Court:   Do you understand?

Longs:        Yes, sir.

(Emphasis added).

¶7.   Before proceeding to the bench trial, the trial court acknowledged that Longs previously appeared "with counsel in open court, and the [c]ourt questioned [her] and

3

determined that her waiver of a jury trial . . . was freely and voluntarily given and entered, and that the State consented to this."

¶8.    After the State rested its case-in-chief, the defense moved for a directed verdict on both counts. Finding the State failed to present evidence sufficient to find beyond a reasonable doubt that Longs was guilty of premeditated first-degree murder, the trial court "grant[ed] a limited directed verdict on the charge of first-degree only." The trial court allowed the State to proceed on Count I for the lesser-included charges of second-degree murder or manslaughter and denied Longs's motion as to Count II, the aggravated assault charge.

¶9.    After trial, the trial court found Longs guilty of manslaughter under Count I. As to Count II, the trial court found that although the State failed to prove the elements of aggravated assault, it did prove the elements of the lesser-included simple assault. As such, the trial court also found Longs guilty of simple assault.

¶10.   Longs was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections for her manslaughter conviction and six months in the custody of the Wilkinson County Sheriff's Department for her simple assault conviction. Both sentences were set to run concurrently. She moved for the trial court to vacate her manslaughter conviction and grant a new trial, which the trial court denied. Longs then appealed.

## DISCUSSION

### I.    The waiver of a jury trial followed procedure.

4

¶11. On appeal, Longs contends the trial court erred by failing to require a "specific written stipulation that [her] right to jury trial ha[d] been waived" or a "written request by her that the action be tried by the [c]ourt, in a bench trial."

¶12. Our Rules of Criminal Procedure allow a defendant to "waive the right to trial by jury with consent of the prosecution and the court." MRCrP 18.1(b). However, before accepting any waiver, "the court shall address the defendant personally, advise the defendant of the right to a jury trial, and ascertain that the waiver is knowing, voluntary, and intelligent." MRCrP 18.1(b)(1). Notably, such waiver "shall be made in writing *or in open court on the record*." MRCrP 18.1(b)(2) (emphasis added).

¶13. The use of the word "or" in our Rules of Criminal Procedure make clear that a jury waiver may be made *either* in writing *or* in open court on the record. That is exactly what happened here. Prior to trial, the trial court "address[ed] [Longs] personally, advise[d] [her] of the right to a jury trial, and ascertain[ed] that [her] waiver [was] knowing, voluntary, and intelligent." This comports with the requirements set out under Rule 18.1(b)(1). Further, Longs went before the trial court—"in open court on the record"—and affirmatively stated multiple times that she wished to waive her right to a jury trial after being questioned by the trial court. This comports with the requirements set out under Rule 18.1(b)(2).

¶14. On appeal, counsel for Longs challenges whether the correct procedure was followed, primarily focusing on language from Mississippi Rule of Civil Procedure 38(b). It is true that rule requires "a specific, written stipulation that the right [to a jury trial] has been waived" in a *civil* case. MRCP 38(b). However, that rule has no application here, as this is

a criminal case, and the "Rules of Criminal Procedure . . . shall govern the procedure in all criminal proceedings[.]" MRCrP 1.1.

¶15. As such, we find the trial court properly questioned Longs about her jury waiver consistent with the requirements of Rule 18.1(b).

**II.    The jury waiver was knowing, intelligent, and voluntary.**

¶16. Longs also argues the trial court erred by finding her waiver was knowing and voluntary. Specifically, she contends that the trial court "failed to fully inform [her] about the nature of the right she was waiving."

¶17. "It is well settled in Mississippi that a jury trial in criminal cases may be waived by the agreement of the accused and the prosecution." *Pipkins v. State*, 756 So. 2d 777, 778 (¶5) (Miss. Ct. App. 1999) (citing *Robinson v. State*, 345 So. 2d 1044, 1045 (Miss. 1977)). But such waiver must be knowingly, intelligently, and voluntarily made. *Wilson v. State*, 81 So. 3d 1067, 1087 (¶30) (Miss. 2012).

¶18. This Court has held that when a trial court "adequately inform[s]" a defendant "of his constitutional right to a jury trial and of the consequences of waiving this right," he cannot then "claim that he was deceived into requesting a bench trial[.]" *Pipkins*, 756 So. 2d at 778 (¶5). In that case, the defendant argued "he did not knowingly and voluntarily waive his right to a jury trial but instead requested a bench trial only at the insistence of his attorney." *Id.* at (¶3).

¶19. However, we held that it was "clear" the trial court adequately advised the defendant of his right to a jury trial, which he voluntarily waived. *Id.* at (¶5).

6

[T]he judge spoke directly to Pipkins and advised him of his constitutional right to a trial by jury. The judge informed Pipkins that a jury was available to hear his case should he change his mind and then proceeded to instruct Pipkins on the function of a jury. The judge then informed Pipkins of the procedure in a bench trial, pointing out that the judge would hear the evidence and make a final determination of guilt. The judge once again questioned Pipkins regarding his decision to waive a jury trial. After being certain that Pipkins was fully aware of the consequences of his decision, the judge proceeded with a bench trial.

*Id.* at (¶4).

¶20. Just as in *Pipkins*, the trial court in the present case advised Longs of her constitutional right to a jury trial. The court ensured Longs "thought about [her decision] very carefully[.]" The trial court described its role during a bench trial to Longs, explaining it "sit[s] just like a jury" and "find[s] the facts and appl[ies] the law." After being released on bond, the trial court stated, "If [for] any reason anything changes or you change your mind, be sure to let [your attorney] know right away" because by the start of trial "we won't have a jury here and it will be too late then." The trial court further clarified that once trial had begun, Longs could not "come back later on and say I wish I had a jury or I changed my mind." Each time the trial court asked Longs if she understood, she responded, "Yes, sir."

¶21. Therefore, we find the trial court "adequately informed [Longs] of [her] constitutional right to a jury trial and of the consequences of waiving this right." We further find the record reflects the trial court correctly found that Longs's waiver was "knowingly, intelligently, and voluntarily made."

**CONCLUSION**

¶22. For the reasons set out above, we find the trial court's questioning of Longs regarding

7

her jury waiver was consistent with Rule 18.1(b). We further find Longs was adequately advised of her right to a jury trial by the trial court, and the trial court correctly found she knowingly, intelligently, and voluntarily waived that right. Therefore, we affirm both convictions and sentences.

¶23.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**